**In re Vaughn**
*[Cite as 5 AOA 374]*

*Case No. CA89-11-162*
*Butler County, (12th)*
*Decided August 13, 1990*

*John F. Holcomb, Butler County Prosecutor, 216 Society Bank Building, Hamilton, Ohio 45011, for Plaintiff-Appellee.*

*Harry B. Zornow, Condo & Walsh, 310 South Front Street, P. O. Box 187, Hamilton, Ohio 45012, for Defendant-Appellant.*

*Per Curiam.*

This cause came on to be heard upon an appeal, transcript of the docket, journal entries and original papers from the Butler County Court of Common Pleas, Juvenile Division, transcript of proceedings, and the briefs of counsel, oral argument having been waived.

Now, therefore, the assignments of error having been fully considered are passed upon in conformity with App. R. 12(A) as follows:

This is an appeal by defendant-appellant, John Lee from an adjudication of delinquency made by the Butler County Court of Common Pleas, Juvenile Division.

On August 9, 1989, at approximately 6:30 p.m., Officers Karen Carter and Karen Rebori of the Bureau of Criminal Identification and Investigation and a confidential informant drove to the corner of Ninth and Chestnut Streets in Hamilton, Ohio. A group of about six young men were standing in the vicinity of the corner. Officer Carter pulled over and asked if anybody had a "twenty," meaning $20 worth of crack cocaine. One of the young men, whom both officers later identified as appellant, handed Carter three pieces of an off-white rock-like substance. Carter handed him $20 and drove away. The confidential informant identified the young man as appellant.

On September 14, 1989, a delinquency complaint was filed alleging that appellant had committed the offense of aggravated trafficking in violation of R.C. 2925.03. Appellant indicated that he would be presenting an alibi defense, that he was in Nyack, New York, visiting relatives on the day of the offense.

The adjudicatory hearing began on September 14, 1989. At the beginning of the hearing, appellant moved for a separation of witnesses. The state concurred in the motion and also moved that appellant's father, John Lee Buxton, be included because he was to be a potential defense witness. The trial court granted the motions and excluded Buxton from the courtroom. The state presented its witnesses and rested. The matter was continued in progress to allow appellant to prepare his alibi defense.

The hearing was continued to October 6, 1989, at which time appellant moved for a continuance to go to Nyack, New York, and depose alibi witnesses at the state's expense. The trial court overruled appellant's motion but permitted him to proffer the statements which he expected to be elicited from his alibi witnesses. Appellant then presented three witnesses who testified that appellant went to New York in August 1989. However, their testimony was somewhat inconsistent.

After the presentation of evidence, the trial court adjudicated appellant delinquent and ordered that appellant be committed to the Department of Youth Services for a minimum period of six months and a maximum period not to exceed his attainment of the age of twenty-one years. Appellant moved that he be given credit for time served in pretrial detention. The trial court overruled the motion but indicated that it would entertain a

motion for early release at the proper time. This appeal followed.

Appellant presents four assignments of error for review. In his first assignment of error, he states that the trial court abused its discretion by excluding his father from the courtroom. He argues that pursuant to Juv. R. 2(16), his father was a party to the proceeding and therefore could not be excluded. We find this assignment of error is not well-taken.

Evid. R. 615 provides:

"At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."

Generally, the separation of witnesses is a matter within the discretion of the trial court. *Oakwood v. Makar* (1983), 11 Ohio App. 3d 46, 48. Evid. R. 615, which became effective in 1980, codifies prior case law regarding the exclusion of witnesses. It modifies prior case law only in one respect, the trial court must order the exclusion of witnesses upon the request of a party. "The enumeration of persons who are not to be excluded from the courtroom under a separation order is in conformity to prior Ohio law." Staff Note to Evid. R. 615.

In *In re Unauthorized Practice of Law* (1963), 175 Ohio St. 149, the Ohio Supreme Court held that the trial court does not abuse its discretion where it excludes a person who is only technically a party and where there is no assurance that that person will not be called as a witness in the proceeding. *Id.* at paragraph five of the syllabus. Even if Buxton had the right to remain in the courtroom, that right was his and not the right of appellant. *Id.* at 153.

Further, in *State v. Ostrowski* (1972), 30 Ohio St. 2d 34, certiorari denied (1972), 409 U.S. 890, 93 S.Ct. 130, the court held:

"If the parents of a juvenile who is the subject of a delinquency hearing in Juvenile Court are to testify at the hearing, the exclusion by the judge of the parents from the courtroom under an order for separation of witnesses until they have testified is not

prejudicial, where the juvenile is represented by counsel during the hearing." *Id.* at paragraph three of the syllabus.

In that case, the supreme court reversed a decision of the court of appeals holding that the trial court had erred by excluding the juvenile's parents from the courtroom. The court of appeals had relied on a statute which stated that the parents of a juvenile "shall be *** present at any hearing involving the child ***." In rejecting the appellate court's reasoning, the supreme court stated "*** such a provision is not intended and does not take away from a trial court its basic right to order a separation of *witnesses* until such time as such witnesses have testified. During such time the exclusion is not of the parents, as such, but instead is the exclusion of witnesses." (Emphasis in original.) *Id.* at 42.

We find these two cases to have continued viability under Evid. R. 615. The trial court must exclude witnesses from the courtroom upon a party's request unless excepted under Evid.R. 615(1), (2) or (3). The court still retains discretion regarding these persons.

Thus, applying these two cases to the present case, the right not to be excluded from the courtroom belongs to the party-witness, appellant's father, not appellant. Appellant's father never objected to the exclusion. Further, while appellant's father was not represented, appellant's counsel was present and cross-examined each witness. Appellant and his father both had identical interests in the matter, i.e., a finding of no delinquency. Therefore, his father's interests were adequately represented. Under the circumstances, we do not find the trial court's decision to exclude appellant's father from the courtroom to be so arbitrary, unreasonable or unconscionable so as to connote an abuse of discretion. Accordingly, appellant's first assignment of error is overruled.

In his second assignment of error, appellant states that the trial court abused its discretion when it overruled appellant's motion to take the depositions of his alibi witnesses in Nyack, New York. He argues that he demonstrated good cause for the depositions to be taken. We find this assignment of error is not well-taken.

Juv. R. 25 states that "[t]he court upon good cause shown may grant authority to take the deposition of a party or other person upon such terms and conditions and in such manner

as the court may fix." The use of the word "may" indicates that the trial court has discretion to allow or disallow depositions and to control the manner and terms under which depositions are taken.

Appellant argues that since there is no case law interpreting the phrase "good cause," then the standards for taking of depositions in Crim. R. 15 should at the very least constitute "good cause." Crim. R. 15 (A) provides:

"If it appears probable that a prospective witness will be unable to attend or will be prevented from attending a trial or hearing, and if it further appears that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment, information, or complaint shall upon motion of the defense attorney or the prosecuting attorney and notice to all the parties, order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place."

Assuming for argument's sake that Crim. R. 15 applies in this case, we find that appellant failed to meet its requirements. This rule first requires that it must appear "probable that a prospective witness will be unable to attend or will be prevented from attending a trial or hearing." Appellant filed & notice of alibi stating that on August 9, 1989 he was in Nyack, New York with five named persons. One of these persons testified at trial. Addresses for two of the witnesses were not included. The remaining three showed New York addresses. Appellant made no attempt to subpoena any of these witnesses. At the second hearing, appellant stated that he had contacted one of his alibi witnesses by phone who stated that she could not come to the hearing. Appellant made no "affirmative showing or representation to the court that the attendance of witnesses *** could not be had at trial." *State v. Gettys* (1976), 49 Ohio App. 2d 241, 249.

Crim. R. 15 also requires that the witness' testimony be material and that a deposition is necessary to "prevent a failure of justice." Appellant presented the testimony of three alibi witnesses, each of whom testified that appellant was in Nyack, New York around the time of the offense. Appellant also testified to this effect. After denying appellant's motion

to depose the additional witnesses, the court allowed appellant to proffer the testimony which appellant claimed would have been elicited from his witnesses. The proffer indicated that their testimony was essentially the same as that given by the witnesses who did testify. The testimony of the New York witnesses would have been cumulative, and hence not necessary to prevent a failure of justice.

In sum, we find that appellant failed to demonstrate good cause to take the depositions and the trial court did not abuse its discretion in overruling appellant's motion. Accordingly, appellant's second assignment of error is overruled.

In his third assignment of error, appellant states that R.C. 2151.355 is unconstitutional because it violates the equal protection clause by not granting an adjudged juvenile delinquent credit for time served in the Juvenile Detention Center prior to final disposition. In his fourth assignment of error, he states that the trial court erred in failing to reduce appellant's minimum commitment to the Department of Youth Services by the number of days he served in the Juvenile Detention Center awaiting his juvenile court hearing. Because these assignments of error are so closely related, we will consider them together. We find that they are not well-taken.

R.C. 2151.355(A) (4) provides that if a child is adjudicated delinquent by reason of having committed an act that would be a felony of the third degree if committed by an adult, such as aggravated trafficking, the court shall "commit the child to the legal custody of the department of youth services for institutionalization *** for an indefinite term consisting of six months and a maximum period not to exceed the child's attainment of the age of twenty-one years[.]" There is no provision for credit for time served in juvenile detention prior to an adjudication of delinquency. On the other hand, R.C. 2967.191 and 2949.08, which apply to adult offenders, allow for credit for the total number of days a prisoner was confined for "any reason arising out of the offense" including confinement while awaiting trial. Thus, appellant claims, juveniles are treated differently from adults and are denied equal protection. We find no merit in this argument.

We first note that all enactments of the General Assembly are presumed to be constitutional. *Mominee v. Scherbath* (1986), 28

Ohio St. 3d 270, 274. The party challenging the constitutionality of a statute bears the burden of overcoming this presumption. *State, ex rel. Jackson, v. Ct. of Common Pleas of Cuyahoga County* (1967), 9 Ohio St. 2d 159, 161.

The guarantee of equal protection of the laws means that "no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes *in the same place and under like circumstances." State v. Gledhill* (1984), 13 Ohio App. 3d 372, 373; *State v. DePascale* (1983), 11 Ohio App. 3d 163, 163. "The Equal Protection Clause does not *** require that the state never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious." *Avery v. Midland County, Texas* (1968), 390 U.S. 474, 484, 88 S.Ct. 1114, 1120. The state "may not draw distinctions between individuals that are irrelevant to a legitimate governmental objective." *Lehr v. Robertson* (1983), 463 U.S. 248, 265, 103 S.Ct. 2985, 2995. Thus, as the first step in the equal protection analysis, "the Court must determine whether persons *similarly* situated are in fact being treated differently." *Grove v. Ohio State University College of Veterinary Medicine* (S.D. Ohio 1976), 424 F.Supp. 377, 387. (Emphasis added).

We find that juveniles adjudicated delinquent and adults convicted of a crime are not groups that are similarly situated. Courts have recognized in a variety of contexts than the state is justified in treating juveniles differently than adults because of its interest in preserving and promoting the welfare of the child. See e.g., *Schall v. Martin* (1984), 467 U.S. 253, 104 S.Ct. 2403; *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 91 S.Ct. 1976; *Prince v. Massachusetts* (1944), 321 U.S. 158, 64 S.Ct. 438; *Mominee, supra,* at 273-74. This proposition is particularly applicable in the context of delinquency proceedings.

Juveniles are entitled to proceedings that "measure up to the essentials of due process and fair treatment," *In re Gault* (1967), 387 U.S. 1, 30, 87 S.Ct. 1428, 1445. However, "the Constitution does not mandate elimination of all differences in the treatment of juveniles." The state's interest in the welfare of children makes "a juvenile proceeding fundamentally different from an adult criminal trial." *Schall, supra,* at 263, 104 S.Ct. 2409. For example, the United States Supreme Court has not extended the right to jury trials to juveniles in delinquency proceedings because to do so would destroy the informality and flexibility inherent in juvenile court proceedings. *McKeiver, supra,* at 545, 91 S.Ct. at 1986.

As a consequence, juveniles have never been treated as a suspect class and legislation aimed at juveniles has never been subjected to the test of strict scrutiny. *Felton v. Fayette School District* (C.A.8, 1989), 875 F.2d 191, 193; *United States, ex rel. Martin, v. Strasburg* (S.D.N.Y. 1981), 513 F. Supp 691, 706, reversed on other grounds *sub nom. Schall v. Martin, supra.* "The right of a state to differentiate between adults and minors is too ingrained in the fabric of the law for such classifications *** to be held to the test of strict scrutiny. Even though pretrial detention interferes with the juveniles' personal liberty, that alone would not seem to warrant application of the strict scrutiny test." *Martin, supra,* at 706.

Therefore, the standard of review to be applied is the rational basis test. The statute must be upheld if it is rationally related to a legitimate governmental objective. *Lehr, supra; Schwan v. Riverside Methodist Hospital* (1983), 6 Ohio St. 3d 300, 301. See also, *Dallas v. Stanglin* (1989), ___ U.S. ___, 109 S.Ct. 1591, 1596. R.C. 2151.01 states that the goals of the juvenile laws are to "provide for the care, protection and physical development of children" and to "protect the public interest in removing the consequences of criminal behavior and the taint of criminality from children committing delinquent acts to substitute therefor a program of supervision, care and rehabilitation." These are, without dispute, legitimate governmental objectives. We find that the failure of R.C. 2151.355 to provide for credit for time served is rationally related to these goals. The mechanistic application of credit for time served would erode the informality and inflexibility of the juvenile court and would undermine the legislature's stated goal of rehabilitation. In theory, a child should not be released from the department of youth services until that child is rehabilitated. Therefore, allowing credit for time served makes little sense as it has little bearing on rehabilitation. Further, the juvenile court can, in its discretion, consider the time a juvenile has served prior to trial in ruling on a motion for early release pursuant to R.C. 2151.38.

In sum, we find that appellant has failed to overcome his burden of showing that R.C. 2151.355 is unconstitutional. Accordingly, the trial judge did not err in failing to give appellant credit for time served in pretrial detention, as he had no statutory authority to do so. *In the Matter of Watson* (June 21, 1983), Franklin App. No. 82AP-1060, unreported. Accordingly, appellant's third and fourth assignments of error are overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Juvenile Division, for execution upon this judgment.

Costs to be taxed in compliance with App. R. 24.

And the court being of the opinion that there were reasonable grounds for this appeal, allows no penalty.

It is further ordered that a certified copy of this Memorandum Decision and Judgment Entry shall constitute the mandate pursuant to App. R. 27.

To all of which the appellant, by his counsel, excepts.

JONES, P.J., HENDRICKSON and YOUNG, JJ., concur.